Michael S. Davis (MD-6317)
Anthony I. Giacobbe, Jr. (AG-0711)
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for Petitioner,
National Union Fire Insurance Company of Pittsburgh, Pa.

**JUDGE SWAIN**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**07 CV 3355**

| | |
|---|---|
| In the Matter of the Application of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., on behalf of itself and each of the related insurers that provided coverage to respondent, | Case No.: |
| Petitioner, | **PETITION FOR APPOINTMENT OF AN ARBITRATOR** |
| For an Order Appointing an Arbitrator in an Arbitration Proceeding | |
| - against - | |
| CRUM STAFFING, INC., CRUM STAFFING II, INC., CRUM RESOURCES, INC., AND CRUM RESOURCES II, INC., D/B/A/ CRUM SERVICES, INC., | |
| Respondents. | |



RECEIVED
APR 2 7 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Petitioner, National Union Fire Insurance Company of Pittsburgh, Pa.,

on behalf of itself and each of the related insurers that provided coverage to respondents

("National Union"), by its attorneys Zeichner Ellman & Krause LLP, as and for its

petition for appointment of an arbitrator avers, upon information and belief:

## THE PARTIES

1.     National Union is an insurance corporation duly organized under the laws of the Commonwealth of Pennsylvania, with a place of business at 70 Pine Street, New York, New York.

2.     Respondents Crum Staffing, Inc., Crum Staffing II, Inc., Crum Resources, Inc., and Crum Resources II, Inc., d/b/a/ Crum Services, Inc., ("Crum" or "Respondents") are, upon information and belief, Florida corporations that collectively do business under the trade name Crum Services, Inc., with principal offices for the transaction of business in Pinellas County, Florida.

## JURISDICTION

3.     This Court has subject matter jurisdiction over this matter due to the diversity of citizenship of the parties, under 28 U.S.C. § 1332(a)(1).  It is a dispute between citizens of different states and the amount in controversy is more than $75,000.

4.     Crum is subject to the personal jurisdiction of this Court.

## PROCEDURAL HISTORY OF RESPONDENTS' DEFAULT TO ARBITRATE

5.     Beginning as of March 31, 2005, National Union provided workers' compensation insurances coverages to Crum pursuant to an insurance program governed by a Payment Agreement dated March 31, 2005 (the "Payment Agreement"), along with schedules and an addendum (the "Addendum to the Payment Agreement").

Copies of the Payment Agreement, the schedules and the Addendum to the Payment Agreement (together, the "Agreements") are annexed collectively at Exhibit A. Pursuant to the Agreements, Crum agreed to pay certain amounts to National Union for premiums, loss reimbursements and security to National Union in connection with the insurance coverages provided to Crum by National Union.

6.    Crum filed a complaint in the Circuit Court of the Sixth Judicial Circuit in and for Pinellas County (the "Complaint"), a copy of which is annexed without exhibits as Exhibit B, referring to the Payment Agreement and seeking declaratory relief, money damages, and temporary or permanent injunctive relief arising out of the cancellation or non-renewal of certain insurance policies. National Union filed a notice of removal with the United States District Court for the Middle District of Florida, Tampa Division (the "Florida District Court"), and subsequently filed a motion with the Florida District Court pursuant to 9 U.S.C. § 4 to compel Crum to arbitrate the disputes asserted in the Complaint, as required by the governing Payment Agreement.

7.    By Order dated November 9, 2006 (the "Order"), the Florida District Court ordered National Union and Crum to arbitrate the disputes asserted in the Complaint in accordance with the arbitration clause in the Payment Agreement. A copy of the Order is annexed as Exhibit C.

8.    National Union will respond to the Complaint in arbitration and will assert a counterclaim for amounts due from Crum to National Union. While such

amounts are subject to adjustment and audits, based upon the most recent available data, the aggregate amount claimed is $1,493,612.

9.    The Addendum to the Payment Agreement provides:

> **How arbitrators must be chosen:** *You* must choose one arbitrator <u>and we must</u> choose another. They will choose the third. If *You* or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, <u>either party may make application only</u> to **a court of competent jurisdiction in the City, County and State of New York.**

Addendum to the Payment Agreement, Exhibit A, p. 2 of 3 (emphasis added).

10.    By letter dated January 23, 2007, National Union demanded that Crum appoint its arbitrator. A copy of the January 24, 2007 letter is annexed at Exhibit D.

11.    On February 21, 2007, counsel for Crum sent a letter to counsel for National Union designating William D. Hager as its party-appointed arbitrator. A copy of the February 21, 2007 letter is annexed hereto as Exhibit E.

12.    The Payment Agreement provides:

> **Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators **must be executive officers or former executive officers of property of casualty insurance or reinsurance companies or insurance brokerage companies,** or risk management officials in an industry similar to *Yours,* domiciled in the United States of

America   not under the control of either party to this Agreement.

Payment Agreement, Exhibit A, p. 8 (emphasis added).

13.    A review of the resume of Mr. Hager reveals that he is not, as required by the Payment Agreement, an active or former "executive officer[]" in a "property or casualty insurance company, reinsurance company, or an insurance brokerage company." Thus, he is not qualified to serve as an arbitrator under the express terms of the Payment Agreement.  A copy of Mr. Hager's resume is annexed as Exhibit F.

14.    On February 23, 2007, counsel for National Union sent a letter to counsel for Crum stating that "Mr. Hager does not satisfy the contractual requirements because he has never been an executive officer of an insurance company" and permitting Crum an extension until March 5, 2007 to appoint its arbitrator.   A copy of the February 23, 2007 letter is annexed hereto as Exhibit G.

15.    On March 2, 2007, counsel for Crum sent a letter to counsel for National Union stating that "clearly Mr. Hager's tenure as President and CEO of NCCI, Inc. ("NCCI") qualifies him as a former chief executive officer of an insurance brokerage company, which is not further defined by the agreement."  A copy of the March 2, 2007 letter is annexed hereto as Exhibit H.

16.    On March 12, 2007, counsel for National Union sent a letter to counsel for Crum requesting that counsel for Crum "provide us with documentation that

NCCI is an insurance brokerage company, such as a copy of NCCI's insurance brokerage license." A copy of the March 12, 2007 letter is annexed hereto as Exhibit I.

17.     On March 14, 2007, counsel for National Union sent another letter to counsel for Crum stating "we have now been informed by NCCI that NCCI is not an insurance brokerage company." A copy of the March 14, 2007 letter is annexed hereto as Exhibit J.

18.     On March 20, 2007 counsel for Crum sent a letter to counsel for National Union stating that Crum would not appoint another arbitrator.  A copy of the March 20, 2007 letter is annexed as Exhibit K.

19.     On March 21, 2007, counsel for National Union sent a letter to counsel for Crum designating Linda Martin Barber, as its party-appointed arbitrator.  A copy of the March 21, 2007 letter is annexed hereto as Exhibit L.

## MR. HAGER DOES NOT MEET THE CONTRACTUAL QUALIFICATIONS TO SERVE AS ARBITRATOR UNDER THE PAYMENT AGREEMENT

20.     NCCI is not an "insurance brokerage company."  An insurance brokerage company is a company that carries on the business of an insurance broker.  An insurance broker is defined as:

> **BROKER,** insurance salesperson who searches the marketplace in the interest of clients, not insurance companies. Dictionary of Insurance Terms, Third Edition, Harvey W. Rubin, Ph.D., CLU, CPCU

**BROKER.** One who represents an insured in the solicitation, negotiation or procurement of contracts of insurance, and who may render services incidental to those functions. By law the broker may also be an agent of the insurer for certain purposes such as delivery of the policy or collection of the premium. <u>Glossary of Insurance Terms, Over 2,500 Definitions of the Most Commonly Used Words in the Industry</u>, 6th Edition, Merritt Publishing, Santa Monica, CA

21.    Also, the United States Court of Appeals for the Second Circuit has held:

Both New York insurance law and common law provide that insurance brokers act as agents on behalf of the insured where they are "employed by the insured to procure insurance."

<u>Evvtex Co., Inc. v. Hartley Cooper Associates Limited and Gibbs Hartley Cooper Limited</u>, 102 F.3d 1327, 1331-32 (2d Cir 1996).

22.    In fact, Mr. Hager's resume, which appears on his website explicitly describes NCCI's functions. Mr. Hager states:

Mr. Hager was appointed President and CEO of NCCI in May 1990. **NCCI is the nation's largest workers compensation and health care informatics corporation. Headquartered in Boca Raton, Florida, the corporation provides database products, software, publications and consultation services to state funds, self-insureds, independent bureaus, agents, regulatory authorities, legislatures and more than 700 insurance companies.** While under Mr. Hager's leadership, NCCI had annual revenues approaching $150 million, NCCI employed 1,000 people located in 20 offices around the United States and was and is the licensed statistical and rate advisory

organization in nearly 40 states. During Hager's leadership, NCCI had annual pricing responsibility for some $16 billion of workers compensation premiums and responsibility to gain regulatory approval of that pricing.

During Hager's tenure, NCCI doubled revenues (from $70 million to $150 million), reduced loss cost inadequacy to nearly zero (down from 25% inadequacy), brought residual markets to an underwriting break-even point (down from $2 billion in annual underwriting losses) and provided the intellectual foundation for $1.5 billion in statutory reform. Concurrently, the organization was right-sized (head count reduced from 1,500 to 1,000), firepower was substantially increased (technical and professionals have increased from 40% to 85% of the employment base), **and the organization was converted from a rate bureau to a contemporary, competitive information company.**

http://www.insurancemetrics.com/IMCNV_resume.html.    See Exhibit F.    (emphasis added)

23.    To confirm that NCCI is not an insurance brokerage company, counsel for National Union contacted NCCI and was referred to Mr. Terrence D. Delehanty, General Counsel and Chief Legal Officer of NCCI Holdings, Inc., who provided a letter on April 12, 2007 confirming that "National Council on Compensation Insurance, Inc. is not an 'insurance brokerage company.'" A copy of his letter is annexed hereto as Exhibit M.

24.    Thus, neither NCCI nor Mr. Hager's resume assert that NCCI is an insurance brokerage company.

25.     Accordingly, Mr. Hager does not meet the contractual requirements to serve as an arbitrator set forth in the Payment Agreement (Exhibit A, p. 8) and Crum, therefore, is in default of its obligation to designate a qualified arbitrator within 30 days as required by the Addendum to the Payment Agreement. (Exhibit A, p. 2 of 3).

26.     Moreover, as discussed above, National Union twice requested that Crum cure its default by appointing a qualified arbitrator and consented to an extension of the time period for Crum to do so.  Crum has refused to do so.

## RELIEF REQUESTED

27.     Petitioner requests that this Court declare that Mr. Hager does not meet the specific contracted requirements to serve as an arbitrator and that this Court appoint a qualified arbitrator in accordance with the Payment Agreement of the parties.

## WHOM TO APPOINT

28.     As noted above, the Payment Agreement of the parties requires:

. . . all arbitrators **must be executive officers or former executive officers of property of casualty insurance or reinsurance companies or insurance brokerage companies,** or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

On a prior occasion in another case, National Union similarly asked the New York State Supreme Court to appoint an arbitrator[1] under a similar contractual provision, and in that instance, the Court turned to ARIAS*US, an association that trains and certifies arbitrators for the insurance and reinsurance industry. See the unpublished decision of the New York State Supreme Court in National Union v. Dyneer (Exhibit N), in which the Court "reviewed candidates from the list maintained by ARIAS U.S.," and chose from that list. We ask this Court to do the same.

29.    ARIAS certifies over 300 potential arbitrators, including Mr. Hager. (Plainly then, Crum is willing to have ARIAS-certified arbitrator on the Panel.) Many, but not all, ARIAS-certified arbitrators qualify under the Payment Agreement, and, inconveniently, Mr. Hager does not.

30.    All ARIAS-certified arbitrators are listed on its web page http://www.arias-us.org. ARIAS' website also lists a more select group of individuals it recommends to serve as neutral arbitrators (referred to as "Umpires").

31.    In order to aid the Court to select qualified individuals, who are certified to be both qualified and neutral, National Union offers the following five candidates from the more select ARIAS Umpire list, and asks this Court to select from among these six names:

---

[1]    The arbitration agreement in that case, unlike the one at issue here, required that a party apply only to the New York State Supreme Court.

Janet J. Burak
Mary Ellen Burns
Ronald S. Gass
Sylvia Kaminsky
Andrew S. Walsh
Richard L. White

The ARIAS resume of each of these individuals is annexed as Exhibit O.

32.    No previous request has been made for the relief requested herein.

33.    Accordingly, National Union requests that this Court schedule an expedited hearing to appoint an Arbitrator from the list of qualified candidates proposed by Petitioner, or alternatively appoint such qualified person as the Court deems proper.

WHEREFORE, National Union requests that this Court declare that Mr. Hager does not meet the specific contractual requirements to serve as an arbitrator and that this Court appoint a qualified arbitrator in accordance with the Payment Agreement of the parties.

Dated:    New York, New York
          April 26, 2007

                              ZEICHNER ELLMAN & KRAUSE LLP
                              Attorneys for National Union Fire
                              Insurance Company of Pittsburgh, Pa.

                              By: _____
                                  Michael S. Davis
                                  Anthony I. Giacobbe, Jr.
                                  575 Lexington Avenue
                                  New York, New York 10022
                                  Tel:  (212) 223-0400
                                  Fax:  (212) 753-0396

11