Michael S. Davis (MD-6317)
Anthony I. Giacobbe, Jr. (AG-0711)
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for Petitioner,
National Union Fire Insurance Company of Pittsburgh, Pa.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., on behalf of itself and each of the related insurers that provided coverage to respondent,<br><br>                                        Petitioner,<br><br>For an Order Appointing an Arbitrator in an Arbitration Proceeding<br><br>           - against -<br><br>CRUM STAFFING, INC., CRUM STAFFING II, INC., CRUM RESOURCES, INC., AND CRUM RESOURCES II, INC., D/B/A/ CRUM SERVICES, INC.,<br><br>                                        Respondents. | Case No.: 07 Civ 3355 (LTS) |

**MEMORANDUM OF LAW IN SUPPORT OF PETITION
OF NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA. TO COMPEL ARBITRATION**

**PRELIMINARY STATEMENT**

National Union Fire Insurance Company of Pittsburgh, Pa., ("National Union") submits this Memorandum of Law in support of its petition (the "Petition") to appoint a qualified arbitrator as a result of the failure of Respondents Crum Staffing, Inc., Crum Staffing II, Inc.,

Crum Resources, Inc., and Crum Resources II, Inc., d/b/a Crum Services, Inc. (collectively, "Respondents") to appoint an arbitrator meeting the qualifications set forth in the arbitration agreement.

9 U.S.C. § 5 provides:

> **If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed;** but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filing a vacancy, **then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein;** and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added). Respondents have failed to appoint a qualified arbitrator. Accordingly, National Union requests that this Court appoint a qualified arbitrator in accordance with the agreement of the parties.

### FACTUAL AND PROCEDURAL HISTORY

The facts are set forth in the declaration of Anthony I. Giacobbe, Jr. and the Petition for Appointment of an Arbitrator, submitted herewith, and the exhibits thereto, which are incorporated herein by reference.

# ARGUMENT

## POINT I

### CRUM HAS FAILED TO APPOINT A QUALIFIED ARBITRATOR

Crum designated William D. Hager as its party-appointed arbitrator. The Payment Agreement provides:

> **Qualifications of arbitrators:** Unless *You* and we agree otherwise, all arbitrators **must be executive officers or former executive officers of property of casualty insurance or reinsurance companies or insurance brokerage companies**, or risk management officials in an industry similar to *Yours*, domiciled in the United States of America not under the control of either party to this Agreement.

Payment Agreement, Exhibit A,[1] p. 8 (emphasis added).

A review of the resume of Mr. Hager reveals that he is not, as required by the Payment Agreement, an active or former "executive officer[]" in a "property or casualty insurance company, reinsurance company, or an insurance brokerage company." Thus, he is not qualified to serve as an arbitrator under the express terms of the Payment Agreement. In response to a letter from counsel from National Union stating that Mr. Hager does not meet the qualifications and extending the time for Crum to appoint a qualified arbitrator, counsel for Crum sent a letter to counsel for National Union stating: "clearly Mr. Hager's tenure as President and CEO of NCCI, Inc. qualifies him as a former chief executive officer of an insurance brokerage company, which is not further defined by the agreement." See Exhibit H.

---

[1] Exhibits referenced herein are annexed to National Union's Petition filed herewith. The Petition is also annexed, with exhibits, to the Declaration of Anthony I. Giacobbe, Jr. submitted herewith.

However, National Council on Compensation Insurance, Inc. ("NCCI") is not an "insurance brokerage company." An insurance brokerage company is a company that carries on the business of an insurance broker. An insurance broker is defined as:

> **BROKER,** insurance salesperson who searches the marketplace in the interest of clients, not insurance companies. Dictionary of Insurance Terms, Third Edition, Harvey W. Rubin, Ph.D., CLU, CPCU
>
> **BROKER.** One who represents an insured in the solicitation, negotiation or procurement of contracts of insurance, and who may render services incidental to those functions. By law the broker may also be an agent of the insurer for certain purposes such as delivery of the policy or collection of the premium. Glossary of Insurance Terms, Over 2,500 Definitions of the Most Commonly Used Words in the Industry, 6th Edition, Merritt Publishing, Santa Monica, CA

Also, the United States Court of Appeals for the Second Circuit has held:

> Both New York insurance law and common law provide that insurance brokers act as agents on behalf of the insured where they are "employed by the insured to procure insurance."

Evvtex Co., Inc. v. Hartley Cooper Associates Limited and Gibbs Hartley Cooper Limited, 102 F.3d 1327, 1331-32 (2d Cir 1996).

In fact, Mr. Hager's resume, which appears on his website explicitly describes NCCI's functions. Mr. Hager states:

> Mr. Hager was appointed President and CEO of NCCI in May 1990. **NCCI is the nation's largest workers compensation and health care informatics corporation. Headquartered in Boca Raton, Florida, the corporation provides database products, software, publications and consultation services to state funds, self-insureds, independent bureaus, agents, regulatory authorities, legislatures and more than 700 insurance companies.** While under Mr. Hager's leadership, NCCI had annual

4

> revenues approaching $150 million, NCCI employed 1,000 people located in 20 offices around the United States and was and is the licensed statistical and rate advisory organization in nearly 40 states. During Hager's leadership, NCCI had annual pricing responsibility for some $16 billion of workers compensation premiums and responsibility to gain regulatory approval of that pricing.
>
> During Hager's tenure, NCCI doubled revenues (from $70 million to $150 million), reduced loss cost inadequacy to nearly zero (down from 25% inadequacy), brought residual markets to an underwriting break-even point (down from $2 billion in annual underwriting losses) and provided the intellectual foundation for $1.5 billion in statutory reform. Concurrently, the organization was right-sized (head count reduced from 1,500 to 1,000), firepower was substantially increased (technical and professionals have increased from 40% to 85% of the employment base), **and the organization was converted from a rate bureau to a contemporary, competitive information company.**

http://www.insurancemetrics.com/IMCNV_resume.html.  See Exhibit E (emphasis added).

To confirm that NCCI is not an insurance brokerage company, counsel for National Union contacted NCCI and was referred to Mr. Terrence D. Delehanty, General Counsel and Chief Legal Officer of NCCI Holdings, Inc., who provided a letter on April 12, 2007 confirming that "National Council on Compensation Insurance, Inc. is not an 'insurance brokerage company.'" See Exhibit L.

Thus, neither NCCI nor Mr. Hager's resume assert that NCCI is an insurance brokerage company. Accordingly, Mr. Hager does not meet the contractual requirements to serve as an arbitrator set forth in the Payment Agreement (Exhibit A, p. 8) and Crum, therefore, is in default of its obligation to designate a qualified arbitrator within 30 days as required by the Addendum to the Payment Agreement. (Exhibit A, p. 2 of 3).

Moreover, National Union twice requested that Crum cure its default by appointing a qualified arbitrator and consented to an extension of the time period for Crum to do so. Crum has refused to do so.

## POINT II

## THIS COURT SHOULD APPOINT A QUALIFIED ARBITRATOR

National Union requests that this Court declare that Mr. Hager does not meet the specific contractual requirements to serve as an arbitrator and that this Court appoint a qualified arbitrator in accordance with the Payment Agreement of the parties. The Addendum to the Payment Agreement provides:

> **How arbitrators must be chosen:** *You* must choose one arbitrator **and we must** choose another. They will choose the third. If *You* or we refuse or neglect to appoint an arbitrator within 30 days after written notice from the other party requesting it to do so, or if the two arbitrators fail to agree on a third arbitrator within 30 days of their appointment, **either party may make application only to a court of competent jurisdiction in the City, County and State of New York.**

Addendum to the Payment Agreement, Exhibit A, p. 2 of 3 (emphasis added).

The contract of the parties is clear on the process and qualifications for selecting arbitrators and this Court should enforce the contract. See Universal Reinsurance Corporation v. Allstate Insurance Company, 16 F.3d 125 (7th Cir. 1994). In Universal, the Court of Appeals reversed the District Court's decision permitting appointment of an arbitrator four days after the date it was due, stating "we are constrained by the terms of the parties' agreement and the Federal Arbitration Act to reach a different result." Id., at 128. In Universal, the consequences of the Court's decision were far more severe than in the instant matter because, in accordance with

the contract at issue in the <u>Universal</u> case, Allstate had appointed an arbitrator for Universal when Universal made its appointment four days late. Here, National Union is merely requesting – as per the parties' agreement – that the Court appoint an arbitrator.

Accordingly, this Court should enforce the agreement of the parties and appoint a qualified arbitrator to serve in this arbitration.

## CONCLUSION

National Union respectfully requests that this Court appoint a qualified arbitrator in accordance with the Payment Agreement of the parties. This Court should enforce the agreement of the parties by granting the petition to appoint a qualified arbitrator to serve in the arbitration.

Dated:   New York, New York
         April 26, 2007

ZEICHNER ELLMAN & KRAUSE LLP

By: _____
Michael S. Davis (MD-6317)
Anthony I. Giacobbe, Jr. (AG-0711)
Attorneys for Petitioner, National Union Fire
   Insurance Company of Pittsburgh, Pa.
575 Lexington Avenue
New York, New York 10022
(212) 223-0400

501975.02/10420-011/AIG