Michael S. Davis (MD-6317)
Anthony I. Giacobbe, Jr. (AG-0711)
ZEICHNER ELLMAN & KRAUSE LLP
575 Lexington Avenue
New York, New York 10022
(212) 223-0400
Attorneys for Petitioner,
National Union Fire Insurance Company of Pittsburgh, Pa.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In the Matter of the Application of NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., on behalf of itself and each of the related insurers that provided coverage to respondent,<br><br>        Petitioner,<br><br>For an Order Appointing an Arbitrator in an Arbitration Proceeding<br><br>    - against -<br><br>CRUM STAFFING, INC., CRUM STAFFING II, INC., CRUM RESOURCES, INC., AND CRUM RESOURCES II, INC., D/B/A/ CRUM SERVICES, INC.,<br><br>        Respondents. | Case No.: 07 CV 3355 (LTS) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
PETITION OF NATIONAL UNION FIRE INSURANCE COMPANY
OF PITTSBURGH, PA. TO APPOINT AN ARBITRATOR**

**PRELIMINARY STATEMENT**

National Union Fire Insurance Company of Pittsburgh, Pa., ("National Union") submits this Reply Memorandum of Law in reply to the memorandum of law submitted by Respondents in opposition to National Union's motion (the "Motion") to appoint a qualified arbitrator as a result of the failure of Respondents Crum Staffing, Inc., Crum Staffing II, Inc.,

Crum Resources, Inc., and Crum Resources II, Inc., d/b/a Crum Services, Inc. (collectively, "Respondents" or "Crum") to appoint an arbitrator meeting the qualifications set forth in the arbitration agreement.

> 9 U.S.C. § 5 provides:
>
> **If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed;** but if no method be provided therein, or if a method be provided and <u>any party thereto shall fail to avail himself of such method,</u> or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filing a vacancy, **then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein;** and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (emphasis added). Respondents' opposition to the Motion confirms that they have failed to appoint a qualified arbitrator. Accordingly, National Union requests that this Court appoint a qualified arbitrator in accordance with the agreement of the parties.

## FACTUAL AND PROCEDURAL HISTORY

The facts are set forth in the declaration of Anthony I. Giacobbe, Jr. and the Petition for Appointment of an Arbitrator, submitted herewith, and the exhibits thereto, which are incorporated herein by reference.

## ARGUMENT

### POINT I

### BY CONTRACT, THIS COURT HAS JURISDICTION TO DECIDE THE MOTION

Crum asserts, plainly in error, that the Motion could only have been brought in the New York State Supreme Court, citing to the Payment Agreement. However, as expressly set forth and cited in the Motion, by an addendum to the Payment Agreement annexed to the Motion, the parties agreed that "either party may make application only to a court of competent jurisdiction in the City, County and State of New York."[1] (Addendum to the Payment Agreement, Exhibit A, p. 2 of 3). Accordingly, it cannot be disputed that this Court has jurisdiction – as expressly agreed in the contract by the parties – to decide the Motion.

### POINT II

### CRUM HAS FAILED TO APPOINT A QUALIFIED ARBITRATOR

In opposition to the Motion, Crum fails to show that Mr. Hager meets the express qualifications of the arbitration agreement which requires that "all arbitrators must be **executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies.**" (Payment Agreement, Exhibit A, p. 8) (emphasis added). Prior to making the Motion, National Union – on two occasions – advised Crum that Mr. Hager does not qualify under the contract and requested that Crum appoint a qualified arbitrator. See Exhibit G and Exhibit J. In response, Crum asserted that "clearly, Mr. Hager's tenure as President and CEO of NCCI, Inc. qualifies his as a former chief executive

---

[1] Based upon a discussion with Crum's counsel after Crum's opposition was filed, National Union understands that this assertion will be withdrawn by Crum.

3

officer of an insurance brokerage company, which is not further defined by the agreement." See Exhibit H. In response to this contention by Crum, National Union submitted affirmative evidence including information listed on Mr. Hager's own website, definitions from insurance dictionaries and, most telling, a letter from NCCI (stating that NCCI is not an "insurance brokerage company") that show that Mr. Hager does not qualify under the contract. See Exhibit F and Exhibit M

Crum did not even respond to this evidence in its opposition to the Motion. Rather, the only document submitted by Crum is a list of ARIAS arbitrators showing certain self-reported descriptive information. That Mr. Hager's ARIAS bio states that he identified himself as a former or retired insurance company executive does not make it so. Simply put, Mr. Hager does not meet the contractual requirement that "all arbitrators must be **executive officers or former executive officers of property or casualty insurance or reinsurance companies or insurance brokerage companies.**" Payment Agreement, Exhibit A, p. 8 (emphasis added).

The relevant contractual provisions in the Payment Agreement are not merely descriptive terms, but rather, insurance industry specific terms with clear objective requirements. In fact, both "insurance companies" and "insurance brokerage companies" are required by state law to be licensed in order to conduct business. For example, in New York, the Insurance Law provides that insurance companies must be licensed as follows:

> No person, firm, association, corporation or joint-stock company shall do an insurance business in this state unless authorized by a license in force pursuant to the provisions of this chapter, or exempted by the provisions of this chapter from such requirement.

Insurance Law § 1102. Likewise, insurance brokers must be licensed.

> The superintendent may issue an insurance broker's license to any individual, firm, association or corporation, hereinafter designated as "licensee," who or which is deemed by him trustworthy and competent to act as a broker in such manner as to safeguard the interests of the insured, and who or which is otherwise qualified as herein required, and who or which has complied with the prerequisites herein prescribed.

Insurance Law § 2104. Because insurance companies and brokers must be licensed, these qualifications leave no room for interpretation. Rather, the contract of the parties provides objective criteria for determining qualifications, criteria that – no matter how many times Crum states otherwise – are not satisfied by Mr. Hager.

## POINT III

### CRUM'S FAILURE TO APPOINT A QUALIFIED ARBITRATOR DESPITE REPEATED REQUESTS REQUIRES THAT THIS COURT APPOINT A QUALIFIED ARBITRATOR

Crum further suggests that it would not be proper for National Union to appoint its own arbitrator and for the Court to appoint Crum's arbitrator. Crum – not the Court – has made this choice already by refusing, despite repeated requests by National Union, to appoint an arbitrator who qualifies under the express contractual provisions. In fact, when National Union objected to Mr. Hager's appointment by letter two times prior to making the Motion and requested that Crum appoint a qualified arbitrator, Crum specifically stated it would not appoint another arbitrator and instructed National Union to "take whatever action based thereon you consider appropriate." See Exhibit K. Crum, thus, knowingly accepted (and even invited) the necessary consequence that the Court would appoint an arbitrator in the absence of Crum doing so.

Moreover, even after receiving the Motion, Crum failed to designate or suggest alternative qualified arbitrators that it would nominate in the event the Court rules that Mr. Hager does not qualify.[2] Crum cannot now claim that the Court should not enforce the contract as written in the face of Crum's blatant refusal to comply with the contract.

Accordingly, this Court should appoint a qualified arbitrator. National Union submitted a suggested list of six qualified arbitrators and Crum does not assert that any of the arbitrators on the list fails to meet the contractual qualifications. Moreover, National Union submitted names that ARIAS has certified as umpires – a designation evidencing impartiality – in order to provide the Court with a selection of individuals indisputably qualified to serve. Whether the Court selects from this list or not, National Union requests that the Court appoint an arbitrator meeting the specific, objective contractual qualifications agreed by the parties.

## POINT IV

### THIS COURT SHOULD NOT DEFER RULING ON THIS MOTION UNTIL AFTER AN AWARD IS ISSUED BY AN ARBITRATION PANEL

Crum asserts, citing two cases, that this Court does not have the authority to appoint an arbitrator until a final award is issued. This assertion is wrong because this Court's mandate under the United States Arbitration Act is clear – to enforce arbitration agreements entered into by parties. Both cases cited by Crum involved allegations that an arbitrator was biased, not that arbitrators did not meet specific contractual qualifications.

In Michaels v. Mariform Shipping, S.A., 624 F.2d 411, 414 n. 4 (2d Cir. 1980), a Panel had already been selected, reviewed evidence at ten hearings over a two-year period and

---

[2] After filing its opposition to the Motion, Crum designated two individuals in response to the direction of this Court dated May 10, 2007.

issued an interim award. The Court was asked to vacate the interim award on the contention that an arbitrator was biased. The Court held correctly that it had no authority to vacate the interim award of an already-established Panel that had heard evidence concerning the award, because it was not a final award.

In the other case cited by Crum, Aviall, Inc. v. Ryder Systems, Inc., 110 F.3d 892, 895 (2d Cir. 1997), the Court upheld an explicit contractual provision by refusing to disqualify an arbitrator who was specifically selected in accordance with the procedures set forth in the contract governing the arbitration. Thus, in Aviall, the Court enforced the contract as written, finding that assertions of bias were insufficient to disqualify an arbitrator selected in accordance with the procedure set forth in the contract. After stating that Aviall entered into an arbitration agreement that contained a specific procedure for selecting an arbitrator, the Court of Appeals explained: "Aviall can hardly object to the Distribution Agreement being enforced according to its terms." Aviall, at 896.

Plainly, both cases involve circumstances that are entirely different from the instant matter – a Panel has not yet been established and National Union does not contend that Mr. Hager is biased under a subjective analysis. Rather, National Union is asking the Court to uphold the explicit objective provisions in the Payment Agreement governing arbitrator qualifications (a proposition upheld by the holding in Aviall).

Here, the Court should likewise enforce the arbitration agreement as written. If Crum were to be permitted to ignore the contractual requirements, the Court would effectively be rewriting the contract in a manner inconsistent with the clear and express intent of the parties. Such a result would encourage – and even reward – Crum's defiant refusal to appoint a qualified

arbitrator, and could render clauses such as this one that provide specific contractual requirements toothless and potentially unenforceable.

## CONCLUSION

The United States Arbitration Act directs courts to enforce arbitration agreements. Here, the parties agreed to appoint arbitrators meeting specific objective criteria, and Crum has failed to appoint a qualified arbitrator. Accordingly, National Union respectfully requests that this Court enforce the agreement of the parties by granting the petition to appoint a qualified arbitrator to serve in the arbitration.

Dated:   New York, New York
         May 10, 2007

                                ZEICHNER ELLMAN & KRAUSE LLP

                                By: _____
                                    Michael S. Davis (MD-6317)
                                    Anthony I. Giacobbe, Jr. (AG-0711)
                                    Attorneys for Petitioner, National Union Fire
                                        Insurance Company of Pittsburgh, Pa.
                                    575 Lexington Avenue
                                    New York, New York 10022
                                    (212) 223-0400

503129.01/10420-011/AIG

STATE OF NEW YORK,
COUNTY OF NEW YORK.

  Michael W. Antonivich, certifies pursuant to 28 U.S.C 1746 under penalty of perjury, that on the 10th day of May, 2007, I caused to be served a true copy of the within **REPLY MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR THE APPOINTMENT OF ARBITRATOR** upon the attorneys hereinafter named at the places hereinafter stated by first class mail to said attorneys at their last known addresses given below and by e-mail to said attorneys at: emery@lawlynch.com:

  Scott Emery, Esq.
  Lynch Daskal Emery LLP
  Attorneys for Respondents
  264 West 40th Street
  New York, New York 10018

Dated: May 10, 2007

                 _____
                  MICHAEL W. ANTONIVICH

502329.01/10420-011/MWA